### Eugene Keteltas *v.* John Penfold and John F. Seaman and wife.

An agreement by A., giving a right to construct a party wall one half thereof upon his lot, and covenanting, for himself, his heirs and assigns, whenever he should erect a new building, to pay to B., his heirs and assigns, a moiety of the value of such portion of the wall as he should use; is a grant of an easement. The grant is an incorporeal hereditament, and the covenant connected with it binds, and is a charge upon the land.

The covenant not having been broken in the lifetime of A., an action for a breach thereof cannot be instituted against his personal representatives, but may be maintained against his devisees upon their using the wall.

The legal estate being vested in devisees in trust, the *cestui que trust* is not a necessary party to a suit for the breach of the covenant, and a joinder of him as a party defendant cannot affect his competency as a witness for the devisees.

Keteltas *v.* Penfold.

The judgment in such an action should be against the devisees solely, and not also against the *cestui que trust.*

Where such an agreement recited, that the parties had agreed that the "division wall" of their houses should be taken down by B., and that he should erect, "in the place thereof," a party wall "on the division line" of the said lots, and A. then covenanted that B. might take down the division wall then standing, and erect in the place thereof a party wall of certain dimensions, to rest equally on the ground of each party; *held,* that the new wall was to be erected on the division line occupied by the former wall, and that A.'s devisees, being sued upon his covenant, could not interpose as a defence a question of title, and object that said line was not the true line of division between the land of the respective parties.

THIS was an action of covenant. In September, 1844, the plaintiff and one Susannah Drake, entered into an agreement under seal, which recited, that the parties were the owners, the former of the house and lot number 122 Water street, and the latter of the adjoining house and lot number 120 Water street; that the party of the first part (the plaintiff) was taking down the building on his premises, for the purpose of erecting a store of a certain height and depth; and that the parties had agreed that the division wall of their houses should be taken down by the plaintiff, and that he should erect, in the place thereof, at his own cost, a party wall, of a prescribed thickness, on the division line of the lots, to be used in common, and the benefit thereof to be mutually enjoyed by the parties and their assigns.

These recitals were followed by a covenant between the parties, for themselves and their respective heirs and assigns, to the effect, that the plaintiff might remove the division wall then standing, and erect, in the place thereof, a twelve inch party wall, one half thereof, in breadth and height, to rest and remain on the ground then owned by the party of the second part, and the other half to rest and remain on the ground of the plaintiff; and the party of the second part, for herself, her heirs and assigns, covenanted, whenever she should erect a new building on her lot, to pay to the plaintiff one half part of the value of such portion of the said wall as she should find it necessary to use for any such new building.

The agreement concluded with a covenant by the plaintiff to construct the wall in a certain manner, the party of the second part, upon payment to him of one moiety of the value of such part of the party wall as she might find it necessary to use at any future time, to be entitled to the use of the wall "in all customary ways," she being under no obligation to make any payment until the erection of a new building upon her lot.

The wall was erected. In 1849, Mrs. Drake died, having devised the premises number 120 Water street to the defendant, Penfold, in trust, to receive the rents and profits, and apply so much thereof as might be necessary for support, to the use of the defendant, Seaman, and the surplus to the use of Ann, the wife of the said Seaman, during his life. The remainder was given to her as her sole and separate property.

After the death of the testatrix, a store was erected upon the lot number 120 Water street, and a portion of the said party wall was used.

This action was instituted to recover one moiety of the value of the portion of the party wall so used. Penfold, the trustee, and Seaman and wife, the *cestui que trusts* under the will of Mrs. Drake, were the parties defendant.

In behalf of the defendants, it was claimed that the old wall was an unauthorized encroachment upon Mrs. Drake's lot; that the true division line between the lots had, for many years, been a subject of constant controversy; that the plaintiff removed the old wall, and then opened negotiations with Mrs. Drake, which resulted in the execution of the agreement in question; that the said agreement was intended to provide for the erection of the new wall on the true division line; and that, in violation of the agreement, the new wall was a bold encroachment upon the land devised by Mrs. Drake.

The cause was referred to the Hon. MICHAEL ULSHOEFFER, as sole referee. After a lengthy trial, the referee found for the plaintiff, and reported the following conclusions:

That the plaintiff and Mrs. Drake entered into the agreement on the 28th September, 1844, in relation to the erection of a party wall, a copy of which is set forth in the complaint. That the plaintiff thereupon erected a wall of the dimensions required in said agreement. That the wall so built by the plaintiff stands upon the centre line of the then existing division wall, one half east and one half west of the centre thereof, as far as that extends, and on a straight line in continuation thereof to the rear of the lot, as contemplated by the agreement. That when the plaintiff was proceeding to build the new wall, the defendant, Seaman, (then acting as Mrs. Drake's agent,) claimed the whole ground on which the old wall stood, which was eight inches thick; and the plaintiff denied such claim, and insisted it was a party wall. That there has been no encroachment by present or previous owners of lot No. 122 on lot No. 120. That the old wall, in lieu of which the new wall was built, was a party wall, and that it had been used as such for more than thirty years before the commencement of this action. That the defendants, in July, 1850, erected upon lot No. 120 a new building, and used said wall so built by plaintiff. That the defendants hold under the will of Mrs. Drake, and the language of the agreement binds them to perform her undertaking, and the defendants are all liable to the plaintiff in this action. That the covenant in said agreement runs with the land, and is binding upon the defendants, and presumptively admits plaintiff's title to No. 122 Water street. That the defendants adopted the wall built by the plaintiff as a party wall, by using it as such on their side; and that they thereupon became liable to pay for one half of the expense, under the agreement of Mrs. Drake, which was admitted to be of the value of $407, with interest from July 1, 1850. That the use of the old division wall, as a party wall, was long enough to create the presumption of the plaintiff's right and title, which presumption is not rebutted by the defendant's evidence.

In the course of the reference, the defendant, Seaman, one of the *cestui que trusts* named in the will of Mrs. Drake, was

offered as a witness in behalf of the defendant Penfold, the devisee in trust, and was excluded.

The referee held the defendants all liable to the plaintiff's action, and made his award against them all.

Judgment was docketed in favor of the plaintiff for the amount awarded and costs. The defendants appealed to the court at general term. The case, as prepared upon the appeal, contained the pleadings and evidence in full, and exceptions to rulings and to the final conclusions of the referee.

*Francis R. Tillou* and *Walter Z. Cutting*, made and argued the following and other points:

I. The plaintiff cannot recover in this action of covenant without showing a strict performance of his covenant. He did not build the new wall on the division line of the lots, one half on the plaintiff's and one half on the defendant's lot. Instead, thereof, his new wall was a bold encroachment on the defendant's lot.

II. The plaintiff cannot claim title to the line arbitrarily assumed by him in the erection of his new wall, on the ground of acquiescence. It has been a subject of constant conflict for 27 years.

III. The plaintiff has no title by adverse possession. (*Jackson* v. *Camp*, 1 Cow. 605; *Simpson* v. *Downing*, 23 Wend. 316; *Livingston* v. *Prosseus*, 2 Hill, 526; *Livingston* v. *Peru Iron Co.*, 9 Wend. 511; *Jackson* v. *Frost*, 5 Cow. Rep. 346; Lord Coke, 1 Inst. 18 b.; Com. on Litt. sec. 12.)

IV. The covenant to pay for one half of the party wall is not a covenant running with the land. (1.) It is not sufficient that a covenant is concerning the land; but, in order to make it run with the land, there must be a privity of estate between the covenanting parties. (2 Sugden on Vendors and Purchasers, 465, (311,) ch. 14, sec. 1, 13 a, to 20, 21; *Webb* v. *Russell*, 3 Tennon Rep. 392.) Here there was no privity of estate between plaintiff and Mrs. Drake. They never owned the same piece of ground, or any piece of ground in common, but independent lots; i. e., plaintiff No. 122, and

Mrs. Drake, 120 Water street. (*Spence's Case*, 5 Coke, 16 a, and notes in Thomas & Frazer's edition; 1 Smith's Leading Cases, 22; *Stakes* v. *Russell*, 3 T. R. 678; 1 H. Blk. 362; see 3 Barn. & Ad. 591; see opinion of Lord Brougham, *Keppel* v. *Bailey*, 2 Mylne & Keene, 542.)    (2.) It is impossible to get over the objection by the form of the covenant, for although the covenant be with A. B., his heirs and assigns, yet the assignee will not be entitled to the benefit of the covenant unless it run with the land by the general rule of law. (2 Vend. & P. ch. 14, sec. 1, 13 a, 311, 465.)    (3.) The Stat. 32 Henry VIII. relates solely to covenants between landlords and tenants, assignees of the reversion and lessees, and the lessors or assignees of the reversion.    (*a.*) Before that statute, the assignee of the reversion might maintain debt against the lessee or assignee of the lease for rent upon the privity of estate.    (*b.*) But the assignee of the reversion could bring no action upon such covenant, as to repair, &c.    The statute, it is said, did not transfer any privity of contract to the assignee, but the intent of it was to annex to the reversion such covenants only which concerned the land itself, as to repairs, &c., and not to annex any collateral covenants, as to pay a sum of money.    But although the statute did not transfer any privity of contract depending upon personal covenants, yet it did transfer privity of contract depending upon estate.    (2 Vend. & P. ch. 14, secs. 1, 20, pp. 313, 468.)    (*c.*) The Stat. 32 Henry VIII. ch. 34, § 2, in its preamble expressly states, that by the common law, no stranger to any covenant, action or condition, shall take any advantage or benefit of the same, but only such as be parties or privies thereunto.    And the act then proceeds to give to grantees of reversions the same right to take advantage of covenants and conditions as the grantors had, and to give corresponding rights to lessees.    This rental shows very clearly, that except in the cases provided for by that statute—cases between landlord and tenant—there can be no such thing as a covenant running with the land, where there is no privity of estate.    (4.) Nor will a subsequent purchaser, with notice that his grantor has assumed to bind

others than the law authorizes him to bind or affect by his contracts, has attempted to create a real burden upon property which is inconsistent with the nature of that property, and unknown to the principles of the law, be bound by affecting his conscience in equity. (2 Sugden's Vend. & P. ch. 14, §§ 1, 78, page 335 at top, 503, 504 at bottom.) (5.) The question here is, or at least the question which is submitted in regard to this case, and which, by the very form of stating it, concedes to the plaintiff more than we think he can claim; and the most he can pretend to claim for it is, how far a covenant, capable in its own nature of running with the assignment of a present estate in land, possesses or retains that capacity where no tenure exists, and no estate passes between covenantor and covenantee, at the time of covenant made? In other words, conceding that the covenant has a capacity to run with the land, does it in fact run? are its feet set in motion between these parties? Here no estate passed between Mrs. Drake and Keteltas, and no tenure was created or ever existed between them. (Rowle on Covenants, 282; *Nake* v. *Arder,* Croke Eliz. 436.) This distinguishes the present case from *Savage* v. *Mason,* 3 Cushing, 318; *Weyman's Executors* v. *Ringgold,* 1 Bradford, 53, 54, is a case presenting the same feature. (See Smith's note to *Spence's Case,* last ed. of 1852, of 1 Smith's Lead. Cases, p. 112; *Roach* v. *Wadham,* 6 East, 289; *Brewster* v. *Kitchell,* Ld. Raym. 318; Combenback, 324; 1 Salk. 198; 12 Mod. 166; Holt, 175, 669, with the argts. of counsel; 5 Mod. 368.) (6.) 3 Cruise, tit. 28, ch. 1, 272, § 4, defines the three several kinds of rent. (*a.*) Rent service, which consists of fealty and a monied payment. (2.) Rent charge, a rent granted or reserved, and thus charged on some particular estate, with right of distress. (3.) Rent charge without power of distress, rent seck. or barren rent. Rent of whatever kind must issue out of the thing granted. (3 Cruise, 272, § 3.) (*b.*) 83, sec. 55: "The right to a rent service is real property, and descendible to the person entitled to the reversion of the lands out of which it issues. But, from the moment that a payment of rent becomes due, it

is then personal property; therefore, where the person entitled to a rent service outlives the day on which it becomes due, it will go to his executor or administrator; but if the lessor dies on the day preceding the day of payment, the rent will go to the heirs as incident to the reversion." (*c.*) § 63: A rent charge of inheritance is also real property, descendible to the heir. (*d.*) Cases founded on grants of rent charges, therefore, are not analogous to the present, because a grant of a rent charge is a grant of a portion of the inheritance, like a grant of an easement, and creates a privity of estate, and descends to the heir. (*Weyman's Executors* v. *Ringgold*, 1 Bradford, 54, 55, 56.) (7.) This is not a grant of an easement. Each party remains in possession of his whole lot, as much as before covenant made. The lots are possessed in entireties by the respective owners, each owning and occupying to the centre of the party wall. (*Matts* v. *Hawkins*, 5 Taunton R. 20; 1 Eng. Com. Law, 24.) (8.) Having stated what this covenant is not, let us now see what it is. It is a covenant to pay for work, and labor, and materials, to pay for the brick, and mortar, and mason work requisite to construct a wall of a house. Suppose, instead of a covenant to pay for building one wall, it had been a covenant, in a building contract, to pay for building four walls of a house, and the entire charge for building. Would any man contend that every successive owner would be bound to pay the builder? In other words, does an ordinary building contract run with the land? (9.) § 141 (1 R. S. 739) was intended to apply solely to lineal and collateral warrantees. Collateral warrantees had been abolished by the R. L. of 1813. (See 1 R. L. p. 525, § 26; id. 25, and p. 173, § 8, and the revisor's note.) 3 Revisor's reports (p. 68, § 177) show, that they merely intended to abolish lineal warrantees, and substitute remedy by action, against the heirs and devisees, for the old remedy upon voucher or warrantee charter, which required the heir of the warrantor to give the warrantee, on eviction, lands of equal value to those he had lost, out of the real assets descended to such heir. It is not perceived that this section, although it

evidently had a great influence upon Judge ULSHOEFFER's opinion, has any particular relation to the subject. (Fitz. Nat. Brevium, 134, on the Writ Warrantia Chartæ. See, further, Co. Litt. 365 ; and 4 Kent's Com. 7th ed. 520 ; *Sir Henry Rall* v. *Sir Herbert Osborn*, Habart, 21, 22 ; Roscoe's Real Actions, 142.)

VI. The court erred in rejecting the testimony of the defendant, Seaman. He has no interest in the land, either at law or in equity, by the express words of the R. S., in regard to uses and trusts. (*a.*) The 60th section (1 R. S. 729) provides that every express trust, valid as such at the time of its creation, except as herein otherwise provided, shall vest the whole estate in the trustees in law and in equity, subject only to the execution of the trust. This would make the matter clear. (*b.*) But, to remove all doubt, the next clause provides, that " the persons for whose benefit the trust is created, shall take no estate or interest in the lands, but may enforce the performance of the trust in equity." (*c.*) In England, under Lord Denman's act, it has been decided, that even a *cestui que trust*, for whose express benefit the land is held, is yet a competent witness. (*Having* v. *Hodgkinson*, 4 Eng. Law and Eq. 462 ; 20 Law J. Rep. N. S. Exch. 236.) This decision was made under 6 & 7 Vict. ch. 85, which contains a proviso, excluding parties, lessors of plaintiffs in ejectment, and every " person in whose immediate and individual behalf any action may be brought or defended, either wholly or in part," &c. (See the statute at large in the Law Library, Sts. of Session of 1843.) The language of the Code (§§ 398, 399) is almost identical with that of Lord Denman's act, and was very evidently framed on that model. (See the note in Voorhies' Code, p. 402, and 1 Code Rep. 55, and note and report of the commissioners on Code of 1848, p. 248 ; 4 Western Law Journal, N. S. 326 ; 8 id. 511.)

*C. Bainbridge Smith,* for the plaintiff, made and argued the following and other points :

I. The agreement in relation to the party wall is a cove-

nant running with the land. (*Spencer's Case*, 3 Coke, 16; id. 1 Smith's L. C. Am. ed. p. 92, marg. 22; *Brown* v. *Pentz*, 11 N. Y. Leg. Ob. 25; *Savage* v. *Mason*, 3 Cush. R. 500; *Allen* v. *Culver*, 3 Denio, p. 295; *Weyman's Ex.* v. *Ringgold*, 1 Bradf. R. p. 53.)

II. There is no misjoinder. The defendants were properly made parties; Mr. Penfold, the trustee, who has the legal estate, Mr. Seaman, to whose support the rents are to be applied, and Mrs. Seaman, his wife, in whom the remainder is vested, and to whom the surplus rents are now to be paid.

1. The defendants are all liable. (2 R. S. 3d ed. p. 22, § 141; (2.) They are assignees in law, and, as such, liable for covenants running with the land. (*Spencer's Case*, 1 Smith's L. C. p. 92, Am. notes and cases cited therein; 4 Kent's Com. 471, 472; Bac. Abr. Cov. E.)

2. If either of the defendants is liable, the action is maintainable. (1.) The rule which existed in equity as to parties, is applicable to the Code. (Code of Pro. § 111, Voorh. ed. and cases cited therein.) The following sections show the clear intention of the legislature in that respect: §§ 69, 118, 114, s. 4, 274. (2.) Under the former practice it was held, in a suit at law, that "if the action be against several defendants in a representative character, upon the contract of him who they are alleged to represent, and not upon the joint contract of themselves, the plaintiff is entitled to a verdict against such of the defendants as he proves to be chargeable, although he fails to show the liability of all. (*Judson* v. *Gibbons*, 5 Wend. R. 224.) (3.) The plaintiff would also have been entitled to relief in equity. Thus, "rent may be recovered in equity, where the remedy has become difficult or doubtful at law, or where there is a perplexity or uncertainty as to the title, or to the extent of the defendants' liability." (*Livingston* v. *Livingston*, 4 Johns. C. R. 187; Taylor's Land. and T. 2d ed. p. 449.)

3. Under the present practice, where law and equity are blended together, the objection to the parties is not well founded, for the court may grant any relief consistent with

the case, (§ 275,) and may affirm the judgment as to one or more, and reverse it as to others (§ 274). All the facts are set forth in the complaint. Nor can the defendants take the objection by answer; that can only be done in those cases where the objectionable matter does not appear upon the face of the complaint (§§ 144, 147, 148). The answer concedes that the defendant, Penfold, is a proper party to the action.

III. The referee properly excluded the defendant, Seaman, as a witness. This witness was jointly liable with Mrs. Seaman, his wife, and in fact was more interested in the event than the other defendants. In the case of *Foot and Wife* v. *Goding's Executors*, (not yet reported,) the Court of Appeals held, that " one of several co-executors, who are joint defendants in the suit, is not competent as a witness for his co-defendants, for where a party is so situated that his testimony must necessarily accrue to his own benefit, and operate in his own behalf, as well as that of his co-defendants, he cannot be examined as a witness for them, and he can be so examined only when his testimony can be used for the other parties, without being available to him." (See, also, *Holman* v. *Dord*, 12 Barb. S. C. R. 336 ; *Hasbrouck* v. *Vandervoort*, 4 Sand. S. C. R. 596.)

IV. As to the alleged encroachment. There was no encroachment upon the defendant's lot (No. 120) at any time, nor any evidence tending to establish it. (1.) It is now too late to question whether there was an encroachment previous to the erection of the new wall, or to whom the old wall originally belonged, or whether it was a party wall or not. (*Walkins* v. *Hewitt*, Court of Appeals, not yet reported; Best on Presumption, §§ 136, 224 ; 3 Kent's Com. 438 ; Law of Easements, p. 200.)

V. It is not pretended that the new wall was not erected in the place of the old division wall; and in erecting it in that manner, the plaintiff performed the agreement on his part.

VI. The defendants are estopped.

By the Court. DALY, J.—Mrs. Drake, by the agree-

ment which she entered into with the plaintiff, under seal, granted to him the use of six inches of the lot number 120 Water street, for the purpose of erecting a party wall, and covenanted, for herself, her heirs and assigns, that whenever she should erect a new building on her lot, she would pay to the plaintiff, his heirs or assigns, one half part of the value of such portion of the party wall as she might find it necessary to use for such new building.

This was a grant of an easement. It was an incorporeal hereditament, and the covenant connected with it bound and was a charge upon the land ; (*Weyman's Executors* v. *Ringgold,* 2 Bradford, 55 ; *Breckenridge* v. *Ingram,* 2 Ves. 663 ; Co. Litt. 19, 20 ; 2 Bl. 19 ; *Brewster* v. *Kitchell,* 1 L. Ray. 317 ; 1 Smith's Leading Cases, Notes to Am. ed. p. 92 ;) for a covenant will run with an incorporeal hereditament ; (*Balby* v. *Wells,* 3 Wils. 26 ; *Mayor of Congleton* v. *Pattison,* 10 East, 130 ; *North* v. *Ipswich Factory,* 5 N. Hamp. 192 ; Platt on Cov. 469.)

The defendant, Penfold, as devisee in trust, took the land subject to this covenant, and having erected a store upon the lot, and made use of the party wall, he became liable to pay one half the value of it. (2 Crabbe on Real Property, 1,088 ; 1 Smith's Lead. Cases, note of Am. ed. p. 93.)

An action for the breach of this covenant could not be maintained against the personal representatives of Mrs. Drake, for it was not broken during her lifetime. (Platt on Cov. 457.) If she had held under a lease, and her executor had entered and made use of the party wall, the executor would be liable *de bonis testatoris.* (Anon. Dyer, 324, b. pl. 34 ; *Bull* v. *Wheeler,* Cro. Jac. 647 ; *Dean and Chapter of Bristol* v. *Gyse,* 1 Saund. 111.) But ·the estate at her death passed to the defendant, Penfold ; he has made use of the wall, and if the covenant cannot be enforced against him, the plaintiff is without a remedy.

The agreement between Mrs. Drake and the plaintiff recites that the parties have agreed that the division wall of their houses shall be taken down by the plaintiff, and that he shall

erect, " in the place thereof," a party wall twelve inches thick, on the division line of the said lots; and she then covenants that he may take down the division wall then standing, and erect, in the place thereof, a twelve inch party wall, one half of which in breadth and height is to rest on the ground owned by the respective parties. Whatever may have been the state of things previous to the entering into this agreement, I think it is plain, from the terms of it, that the " division line" upon which the new party wall was to be erected was that made by the old " division wall," and assuming that to be the line intended, the plaintiff erected the new party wall upon the place or site of the old one, and thus discharged his covenant.

Seaman was a competent witness of the defendant. He was not necessarily a party, and the plaintiff, by making him a party, could not deprive the defendants of the benfit of his testimony. The legal estate was in Penfold. He held it as trustee during the life of Seaman, Seaman standing in the relation of *cestui que trust*, and there was no occasion for making him a party. (1 R. S. 729, §§ 60, 61; *Having* v. *Hodgkinson*, 4 Eng. Law and Eq. 462; Code, §§ 398, 399.)

The judgment is entered up jointly against all the defendants for the damages claimed. There can be no judgment against Seaman and wife for damages resulting from the breach of the covenant. The legal estate is not in them. The wall was not taken by them, for there is no evidence that they put up the building. The pleadings allege Penfold to be the sole owner, and the judgment should be against him alone.

We could rectify this error by affirming the judgment as to Penfold, had Seaman not been offered and excluded as a witness; but for this error the case must go back to the referee.

Judgment reversed, and case referred back to the referee; costs to abide the event.